# United States District Court
# Northern District of Indiana

| | |
|---|---|
| JAMES E. STARKS SR., <br><br> Plaintiff, <br><br> v. <br><br> OMNISOURCE CORPORATION, <br><br> Defendant. | Civil Action No. 1:15-CV-251 JVB |

## OPINION AND ORDER

This matter is before the Court on Defendant OmniSource Corporation's motion for summary judgment (DE 57) and supporting brief, Plaintiff James Starks's response brief, and Defendant's reply. Also before the Court is Defendant's motion to strike portions of Plaintiff's affidavit and his proposed errata changes to his deposition (DE 61), to which Plaintiff has not responded.

### A. The Motion to Strike

The first statement in Plaintiff's affidavit of concern to Defendant is ¶ 19: "There was no knowledge or information of alcohol impairment or consumption known to the Defendant or communicated to the undersigned by the Defendant on the date of termination." (DE 59-1 at 7.) Defendant argues that Starks does not have first-hand knowledge of what Defendant, through its agents, knew about alcohol impairment and consumption. The Court agrees and will strike the words "known to the Defendant or" from ¶ 19.

Defendant next moves to strike ¶ 33 of the affidavit, in which Plaintiff states: "Others in the non-protected class were not disciplined for similar or worse conduct involving alcohol on

the Defendant's workplace premises." (DE 59-1 at 9.) Defendant also objects to ¶ 36. There Plaintiff states:

> Other white male co-employees who were not disciplined for possession and consumption of alcohol during this period were Samuel Shinaberry, Gary Hedges, Robert Yagle, Timothy Southivong [Asian American], Chris Banks and Kyle Weible. Starks could smell alcohol on their breath and/or Southivong, Banks and Weible were sent home by OmniSource management for consumption of alcohol. [Exhibit E, Starks Depo., pp. 37–39, Appendix, pp. 26–28 and Worrell Affidavit, Exhibit B, Defendant's Index]

*Id.* Defendant maintains that these assertions contradict statements in Plaintiff's deposition and run afoul of the rule that a party cannot defeat summary judgment by such means. *See Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1104 (7th Cir. 1985).

In his deposition, Plaintiff said that Scott Worrell, Sammy Shinaberry, Gary Hedges, Robert Yagle, and Timothy Southivong were employees whose names he could think of on the day of the deposition who had consumed alcohol before coming to work and that he knew that because he smelled it on them. He further testified that he believed that Chris Banks, Timothy Softhong, and Kyle Weible were sent home from work because someone thought they had alcohol in their systems. However, he also stated in his deposition that he only heard rumors that they had been sent home and didn't know the details.

Defendant has not shown the Court how Plaintiff's statement in ¶ 33 contradicts anything he said in his deposition. Accordingly, the Court **DENIES** its motion to strike as to that paragraph.

Turning to ¶ 36, the statement that Southivong, Banks, and Weible were sent home for consumption of alcohol will be stricken, because Plaintiff's claim in his affidavit of personal knowledge of these events contradicts his deposition testimony that he had only heard rumors

2

about them. However, the other statements in ¶ 36 will not be stricken because, once again, Defendant has not shown how they contradict his deposition testimony.

Finally, Defendant asks the Court to strike a statement Plaintiff made in the errata sheet to his deposition, in which he answers a question he wasn't asked during the deposition. He admitted in his deposition testimony that he brought a lunch bag to work that had two wine cooler bottles in it. However, in his errata sheet he added that he didn't know the bottles were there. This statement contradicts nothing in his deposition, but merely adds to it. Moreover, Plaintiff makes the same statement in his affidavit, so that striking it from the errata sheet would be pointless. The Court **DENIES** Defendant's motion with regard to striking the statement in the errata sheet.

B.      **Summary Judgment**

(1)     *Legal Standard*

Under Federal Rule of Civil Procedure 56(a), the Court must grant a motion for summary judgment if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**(2)** *Facts*

The following facts are accepted as true for the purpose of this opinion. Plaintiff, who is African-American and black, was employed as a lab tech at OmniSource's facility on Taylor Street in Fort Wayne from February 2004 through June 20, 2014. His immediate supervisor was Scott Worrell.

OmniSource has a long-standing policy against possession of alcohol at the workplace, which has been set out in its employee handbook since at least 2003. The 2014 handbook specifically warns employees that, while certain issues, such as attendance and work performance, will be dealt with by progressive discipline, other violations, such as working under the influence of alcohol and possession of alcohol in the workplace are behaviors that may

4

result in disciplinary action up to and including termination of employment.

Plaintiff was terminated on June 20, 2014, after an unopened wine cooler bottle and an opened, empty wine cooler bottle were found in his lunch bag, under his desk in his office. Two days before his termination, an Omnisource employee who is African-American and black, told Worrell that he suspected that one of the two lab techs (Plaintiff and Rahman Pittman, who is also African-American and black) had been drinking in the lab because he saw empty beer cans in the trash. Worrell went to the lab and found two beer cans in the trash. Worrell didn't inspect any of Pittman's personal belongings because Pittman didn't have any personal items such as a lunch bag or cooler in the lab that day. Worrell told his supervisor, Scott Frederick, and together they called the human resources manager, Brian Rothgeb, for guidance. Rothgeb told them that they should continue monitoring the lab techs and could search personal belongings if necessary. On June 20, Worrell inspected the workstations of both lab techs and Plaintiff's personal belongings located there, whereupon he found the wine cooler bottles in Plaintiff's lunch bag. Worrell notified Frederick and they called Rothgeb, who came to Taylor Street to inspect the lunch bag; he saw the wine cooler bottles. Starks confirmed to Rothgeb that the lunch bag belonged to him. Rothgeb then terminated Starks's employment.

Plaintiff admits that the wine cooler bottles were found in his lunch bag on Defendant's premises but insists he didn't know they were in his lunch bag when he brought the bag into the Taylor Street facility. When asked at his deposition who put the wine cooler bottles into his lunch bag, he responded that he had stopped at the liquor store and gone to his mother's house the previous evening. From his statement that he "never even looked in the bag to even check to make sure it was gone" (DE 60-1 at 22), it may be inferred that either he put the wine coolers

5

into the lunch bag the night before his termination or saw someone else put them there. In his affidavit he stated that a relative had put "the wine cooler bottle" into his lunch bag the night before his termination (DE 59-1 at 5). He didn't consume any alcohol at his workplace on the day he was fired nor was he under the influence of alcohol at work that day. Also, he didn't bring beer into the workplace or drink beer there in the two days preceding his termination.

In his affidavit, Starks vaguely states that "during this period" (DE 59-1 at 36), he smelled alcohol on white male co-workers Samuel Shinaberry, Gary Hedges, Robert Yagle, Chris Banks, and Kyle Wible, and also on Timothy Southivong, who is Asian-American, but none of these employees were disciplined for possession or consumption of alcohol. Starks didn't report this perception to anyone. Worrell directly supervised Shinaberry, Southivong, and Banks at one time or another during their employment with OmniSource, but never supervised Hedges, Yagle, or Wible. Neither Worrell nor Frederick personally observed Shinaberry, Hedges, Yagle, or Banks at work while possessing or after consuming alcohol and did not receive any reports that any of them possessed alcohol at work or came to work after consuming alcohol.

Wible was terminated more than three years before Starks's termination. Frederick does not recall an incident in which Wible reported to work under the influence of alcohol and there is no evidence that Frederick had any knowledge that Wible possessed alcohol at work or received reports that he possessed alcohol at work or came to work under the influence of alcohol. Similarly, there is no evidence that Worrell either personally observed or received reports that Wible possessed alcohol at work or came to work under the influence of alcohol. Nor is there any evidence that Rothgeb personally observed or received reports that any of these white co-

workers possessed alcohol at work or came to work under the influence of alcohol.

Worrell recalls one instance when he smelled alcohol on Timothy Southivong and reported it to Frederick, who confronted Southivong. Frederick determined that Southivong smelled of stale beer from drinking the night before but that he was not, at the time Frederick talked to him, impaired or under the influence of alcohol and that he did not possess alcohol. Frederick warned him not to repeat his actions, but Southivong was not disciplined. There is no evidence that Rothgeb knew about this incident.

Starks was required to complete reports that other lab techs—Samuel Shinaberry, a white male, and Rahman Pittman, a black male—were not required to complete, but because of these additional responsibilities, he received a higher rate of pay than the others. Also, Carey Bowers and David Brumett, receiving clerks at OmniSource both of whom are white, were allowed to take vacation time in the middle of the month that Starks was not allowed to take.

In Starks's most recent performance review before his termination—covering the 2013 calendar year and completed by Scott Worrell—he was rated as having met his job requirements in two of six categories and as having exceeded those requirements in four others.

**(3)** *Discussion*

Title VII of the Civil Rights Act of 1964, as amended, makes it an "unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race [or] color . . .." 42 U.S.C. § 2000e-2(a)(1). Starks alleges that OmniSource terminated him because of his race and color.

7

The Court first analyzes Starts's evidence under the *McDonnell Douglas* framework. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under that framework a plaintiff may establish a prima facie case of discrimination by offering evidence that: (1) he is a member of a protected class, (2) his job performance met the employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) one or more similarly situated employees not in the protected class were treated more favorably than the plaintiff. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). If a prima facie case is established, a presumption of discrimination arises and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision. When the employer does so, the burden shifts to the plaintiff to present evidence that the stated reason is a pretext. *Id.* To show pretext, a plaintiff must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered reason that a reasonable jury could find it unworthy of belief and thus infer that the defendant did not act for the claimed non-discriminatory reasons. *Bates v. City of Chi.*, 726 F.3d 951, 956 (7th Cir. 2013). This can be done by showing that the employer's reasons for the adverse action (1) had no basis in fact, (2) did not actually motivate the adverse employment action, or (3) was insufficient to motivate the action. *Id.* The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered. *Id.* (Citations and internal quotations omitted.) The goal of the *McDonnell Douglas* analysis is to determine whether the evidence would permit a reasonable factfinder to conclude that a plaintiff's race or other proscribed fact caused his discharge or other adverse employment action. *Khowaja v. Sessions*, 893 F.3d 101, 1014 (7th Cir. 2018).

There is no dispute that Starks is a member of a protected class and that he suffered an

8

adverse employment action. The disagreement surrounds whether his job performance was meeting Omnisource's legitimate expectations and whether similarly situated employees not in the protected class were treated more favorably.

Starks claims that he did not violate OmniSource's ban on alcohol in the workplace because he didn't know alcohol was in his lunch bag and such a scienter requirement should be read into the no-alcohol policy. He also claims that he never possessed the alcohol at work because it was in his lunch bag, under his desk all during his shift and he was elsewhere during that time. The Court disagrees with both arguments. The Court declines to add language to the policy that is not there. Moreover, Starks admitted that he brought the lunch bag in which alcohol was found into his office. While this might not have been enough to satisfy a criminal statute, it is enough to allow his employer to conclude that he possessed alcohol in the workplace.

Starks lists a number of potential comparators, that is, similarly situated non-black coworkers he claims possessed or consumed alcohol in the workplace and suffered no adverse employment actions. All but one of these coworkers can be quickly rejected as comparators because there is no evidence that the decision makers involved in Starks's termination knew that any of them was at work while under the influence of alcohol or that any of them possessed alcohol at work. The one employee Worrell and Frederick suspected of being under the influence of alcohol—Timothy Southivong—also fails as a comparator because Frederick concluded that, although he smelled of stale beer, he was not under the influence of alcohol and did not possess alcohol in the workplace. In other words, Frederick believed that Southivong had not violated the policy against possessing or being under the influence of alcohol in the

9

workplace. There is no evidence in the record to suggest that this belief was wrong.

With regard to OmniSource's proffered reason for terminating Starks—that he possessed alcohol in the workplace—there is no evidence that the reason is merely a pretext. Plaintiff claims that the reason given is factually baseless and insufficient to motivate his termination. But, as we have seen, the conclusion that he possessed alcohol at work was not factually baseless, given that he admitted the lunch bag where the alcohol was found was his and he brought the lunch bag into work. And the handbook specifically warns that possession of alcohol on the job could lead to termination without progressive discipline. While termination was a harsh punishment, there is no evidence to suggest it wasn't the true reason Starks was terminated.

As further evidence of OnmiSource's discrimination, Plaintiff maintains that two white co-workers were allowed to take vacation in the middle of the month that he could not take. Assuming the truth of this assertion, as the Court must when ruling on a motion for summary judgment, it is far too vague to permit an inference that the difference in treatment was motivated by discrimination. As for his complaint that he did extra work white employees were not required to perform, it is undisputed that he received a higher rate of compensation for his extra responsibilities so that it is not reasonable to infer from this circumstance that there was a discriminatory reason for the extra duties.

Viewing the evidence as a whole, the Court determines that a reasonable jury could not conclude that Starks would have kept his job if he had not been black and everything else remained the same.

## C. Conclusion

For the foregoing reasons, OmniSource's motion to strike (DE 61) is GRANTED in part and DENIED in part. OmniSource's motion for summary judgment (DE 57) is GRANTED.

SO ORDERED on February 26, 2019.

<span style="text-align: right;">s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division</span>